Good morning. May it please the court, Jim Schrader representing Mutual Indemnity Bermuda. The fundamental question in this case is whether the plaintiff should be permitted to re-litigate in multiple courts issues that one federal court has already ruled on. Allowing the plaintiffs a second chance to argue the same issues in a second court was especially egregious here because the district court took the truly extraordinary step of enjoining payment of a letter of credit. Your issue you're talking about is the collateral estoppel issue. Collateral estoppel, yes. The district judge did not get to that issue. Actually, Your Honor, the district judge did. Toward the end of the preliminary injunction ruling, when the judge was explaining his reasons, he said that collateral estoppel does not prevent issuing the injunction here because it was making different determinations of issues against a different party. So the judge did deal with collateral estoppel. Oh, I thought he didn't. So the issue then is whether he abused his discretion in that determination. I'm not sure if the proper standard is abuse of discretion or not. What do you believe the proper standard review is? Well, I think that the judge was making a determination as a matter of law, but I think whether it's abuse of discretion or de novo review, in either case the error was obvious enough that this court should reverse. Can I tell you my basic problem with the case? Maybe you can help me out. All these issues, collateral estoppel, venue, personal jurisdiction, they seem to me to actually be sort of irrelevant, which is what I think the district court said. In other words, we have this statute in California, which in some ways is equivalent to a free judgment attachment or garnishment statute. He proceeded under that statute. He didn't make a substantive determination, and he basically said I'm issuing vis-a-vis Bank of America this injunction, and you've got your case in Illinois. It's up on appeal. It's going to go on appeal, and the timing of my injunction may relate to that, but I'm really not getting to the ultimate merits vis-a-vis your client. So what was the abuse in entering the injunction against Bank of America? Well, first of all, Bank of America was a mere stakeholder. Everybody recognized that. Sure. The bank doesn't care who gets the money. The bank will do whatever the court tells it. But that's sort of what the court is saying is, look, I'm just going to put this money over here because there's a statute to do it, and we're going to, you know, hang ten until we get all the rest of this resolved, and that's all I'm doing. That's what he's saying. But in the course of issuing that preliminary injunction ruling, the judge said that collateral estoppel does not prevent me from issuing the injunction, and in doing that, the judge was resolving an issue, the applicability of whether or not the form selection clause required litigation in the courts of Bermuda, and that's an issue that the Illinois court had already decided. That is why what the judge did here was incorrect. But why? Okay, on the form selection clause, that doesn't bind. Does that bind the Hendricks vis-à-vis the Bank of America? It binds the Hendrickses in the sense that the ultimate dispute, as everybody recognizes, the real dispute as to who is entitled to this money while the underlying merits are being fought out, that dispute is between mutual indemnity on one side and the plaintiffs on the other side. And it's at the heart of the dispute between those sets of parties that the district judge in Illinois decided that the form selection clause applied and required that the case be fought out in another forum. And it's that issue that should have been given collateral estoppel effect. Now, collateral estoppel has three elements to it, and I think that they're easily met here. The first is that the issue at stake must be identical to an issue alleged in the prior case. We asked Judge King to deny the preliminary injunction motion for the same reason that we asserted in Illinois, that the form selection clause required that the party's dispute be litigated in the courts of Bermuda. Let me just clarify. In the Illinois action, was a preliminary injunction requested by the plaintiffs in that action? No, Your Honor, it was not. So in that action, I assume they could have. They could have asked for an injunction against mutual not to tap into any of these letters of credit, which were in Michigan and California. Yes, and in fact, I think that would have been the appropriate place to ask for an injunction, to ask for the judge who they would like to have handled the underlying merits to assess the likelihood of success there. That's why I asked the question. I would think that would be appropriate. Yes. But so that issue was not before the Illinois court, just on the Illinois court decided on the basis of venue. Now, they've appealed that to the Seventh Circuit, and I understand it's still collateral estoppel from a trial court. But what is the status of the Seventh Circuit case? Has argument been heard yet? Yes, it was argued at the end of October, Your Honor, there's been no decision yet. I just checked with the court this morning. It was argued in October, no decision yet. Yes. And the panel was? The panel was Judges Posner, Easterbrook, and Evans. Posner who? Frank Easterbrook and Terrence Evans. Well, they're usually pretty quick. They are pretty quick. And, in fact, Your Honor, from that same day, out of the six cases that were argued, there have been five decisions issued already, one of which was just issued last week. So I would expect that this decision is not long in coming. Counsel, I suppose you'll hear about that right away. Would you be kind enough to alert the court when the decision comes down by sending the citation so that we can get to it right away? Our law clerks will probably pick it up, but we would like to be assured. I'm sure that we will let the court know right away. Now, the fact that an injunction was sought here but not in Illinois does not matter for collateral estoppel purposes because this Court has held in many cases that the fact that you seek different remedies in one case from the remedies that you seek in the second case does not matter for collateral estoppel purposes. The question is, was the issue identical in the two cases, and the applicability of the Foreign Selection Clause was the identical issue in both cases? Now, I talked a minute ago about the first requirement for collateral estoppel, which was met here. The second requirement for collateral estoppel is that the issue was actually litigated in the first case. There's no question about that. We moved to dismiss in Illinois precisely because of the Foreign Selection Clause. It was fully briefed there. The third and final element of collateral estoppel is, was the determination of that issue in the first case a critical and necessary part of the judgment there? There's no question about that either. The Foreign Selection Clause was the basis for Judge Castillo's decision dismissing the case. So all three elements of collateral estoppel are met. What we are left with is a case that is much like this Court's decision in offshore sportswear where the Court said that a prior dismissal because of a Foreign Selection Clause had to be given collateral estoppel effect. The plaintiff could not relitigate that issue in a second court. The same result should obtain here. Now, the plaintiffs argue in their brief that the claim is different in this case, different from the Illinois case. That doesn't matter. As I said a minute ago, collateral estoppel depends on whether the issue that the first court decided is the same issue that was posed in the second case, and that is undoubtedly true here. This Court has ruled time and time again that just because the claims are different, that does not matter for collateral estoppel purposes. It's such a different proceeding, it seems to me, and that's why I'm having some trouble matching up all the parties' arguments. I found it kind of confusing because the collateral estoppel really is sort of the venue argument in a different format. And does the venue argument matter for the judge in California proceeding under a statute vis-à-vis a third party? Well, yes, it does. It matters. Why? It matters because what the Form Selection Clause says, what Judge Castillo determined in Illinois was that the Form Selection Clause means that when there's a dispute between the plaintiffs on the one hand and mutual indemnity on the other, that that has to be litigated in the courts of Bermuda. Bermuda, I think. And so in that sense, it doesn't matter whether the plaintiff is proceeding under common law causes of action under Illinois law in Illinois and the California statute in California. The question is, what is the underlying issue that the judge determined in Illinois? And that had to do with the applicability of the Form Selection Clause. That does not depend upon the type of statute or the type of cause of action that you have. And in a sense, that really goes to what I mentioned a minute ago that this Court has held on many times, that when the claims are different in the two cases, that is irrelevant for collateral estoppel purposes. The key is, is the issue that was decided in the first case the same as the issue that's posed in the second case? And we submit that that has been met here. The plaintiffs also argue that the parties are not identical in the two cases. Again, that's beside the point. The focus, again, is whether the issue is the same. Even if the parties are different, collateral estoppel will still apply. There are many cases that say that, and we've cited a lot of them in our brief. The plaintiffs' only other argument about collateral estoppel is that it doesn't apply when a review of the first judgment is de novo on appeal. That is simply wrong. The Supreme Court decided at the end of the 19th century that collateral estoppel applies even if the first judgment is being appealed. Federal courts have followed that ever since. The only exception is in the very rare circumstance when the first case will result in a trial de novo on appeal, which virtually never happens. I've never seen it, and it's certainly not the situation here. That's not what the Seventh Circuit appeal is all about. Collateral estoppel is designed to enforce the fundamental policy reasons of reducing unnecessary litigation, preserving judicial resources. Our system is set up so that parties are entitled to have one court decide an issue one time. They're not allowed to see what happens in the first case, and then if they're not happy with that, go ask a second court in another jurisdiction for a second opinion on the same issue. Courts are busy enough as they are trying to keep up with cases that are filed every day to be asked to decide issues that other courts have already decided. It's especially important that collateral estoppel be applied here because what's involved in this case is an attempt to stop payment on a letter of credit issued as part of an international business transaction. Judge Justice Breyer, when he was on the First Circuit, explained that a principal purpose of a letter of credit is so that if the parties get into a dispute, that the beneficiary of the letter of credit is entitled to draw on it and keep the proceeds until the dispute is resolved. The ruling here turns that presumption on its head. It bars the beneficiary from any access to the money for as long as the dispute continues. Now, the plaintiffs try to justify this by saying, well, we're afraid that we think that mutual indemnity will dissipate the money or abscond with the money or something. There's no evidence to support that at all. Well, would there be an obligation to deposit it somewhere and keep it, or couldn't you? The beneficiary of a letter of credit is under no obligation to deposit it anywhere. What mutual indemnity wants to do with the money is it wants to reimburse itself for $8 million that it paid Legion as a result of losses on the roofer's insurance that the plaintiffs were selling. So if the letter's paid, the money's gone, isn't it? Well, but mutual indemnity has it, and if the plaintiffs ultimately recover on the merits of their claim, they can get it back from mutual indemnity. If they've got the money. And there's no evidence that we will not have the money. The plaintiffs say a couple of times in their brief, mutual indemnity is insolvent. There is not a shred of evidence anywhere in the record that mutual indemnity is insolvent or on the brink of insolvency. Is there an Illinois statute akin to 5109, which really is a derivative of the UCC provisions? I believe it's part of the Illinois UCC. Getting back to Judge Noonan's question about the possibility that mutual indemnity is insolvent, the only thing that the plaintiffs pointed to in their brief on that, which they said was evidence, was something from the Pennsylvania insolvency proceeding of Legion and the judge there in approving a series of settlement agreements, one of which was the $8 million that mutual indemnity paid to Legion to cap its liability and to cap the plaintiff's liability on these insurance programs. And there were some other reinsurers who did the same thing. The judge there said, well, if I don't approve these settlement agreements, there's a danger that some of the reinsurers, and he didn't specify which ones, there were five or six of them involved altogether, might be forced into insolvency. But that's the reason that the judge approved the settlement agreement. So there's not any evidence at all that mutual indemnity will not be able to return this money. The plaintiffs point to the financial difficulties that some of the other affiliated companies are having, such as Legion. But, again, there's no evidence at all that what happens with an affiliated company will have any impact whatever on mutual indemnity. The companies have separate assets, separate balance sheets, and there is simply no evidence, whatever, that there is any impact on mutual indemnity from what happens with another company. And this is a special case. Let me ask you then, I'm just going to go back to what this order does, which basically is freeze the assets. As I understand it, Judge King says, if you, mutual indemnity win in the court of appeals, in the Seventh Circuit, in other words, the Bermuda clause is upheld, then the plaintiffs have to go to Bermuda and have their lawsuit, correct? Correct. And I assume that the Bermuda court would not be able to enjoin Bank America. The court there could certainly enjoin mutual indemnity. The parties. Yes. And that happens, you know, there are other cases involving letters of credit where the court says, I'm going to enjoin the beneficiary from receiving the money, and that sticks. And the court can certainly do that. But under the order as now written, even if Hendricks lose in the Seventh Circuit, this injunction would stay in force. Is that correct? Yes. As currently written, this injunction would stay in force until the underlying merits are litigated in whatever court. Okay. Thank you. If I could reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Steve Pearson on behalf of Kenneth and Diane Hendricks, plaintiffs' affilies. I want to be very clear, Your Honors, this case is not about collateral estoppel. It's not about the form selection clause. Judge King, at the outset of the hearing on the preliminary injunction, made it very clear he was cutting to the chase. In his words, he was going directly to 5109 of the California Commercial Code. It's a model UCC statute. Applies in California. Applies in Michigan. That's where the race was. That's where these letters of credits were issued. It has never been suggested. It wasn't suggested in either the underlying case or in Michigan or in the Illinois court, for that matter, that there was anything inappropriate from a venue standpoint under 5109 in the way we proceeded in prosecuting these actions. May I ask you a question? Yes, Your Honor. The order we're reviewing is a preliminary injunction. Correct, Your Honor. What's it preliminary to? What else is going to happen in the Central District of California? The Central District of California will await the outcome of the merits litigation, whether that occurs in Illinois or occurs in Bermuda, and make a determination whether to release those funds. To do what? Whether to release those funds and to whom, depending on the outcome of the merits. This is rather a strange use of a preliminary injunction. I get a little confused by it. Usually a preliminary injunction is going towards a permanent injunction. Under the federal rules, yes, Your Honor. And so we're governed by federal rules because we're in the federal court? Actually, I think not, and this is why. We have diversity cases. The subject matter jurisdiction in this case was diversity. But that's true. But in a diversity case, the subsidy of law is by the state. The procedural law is by the federal, and so we have federal rules. And I think that's why Judge King correctly analyzes both under Section 5109 and Rule 65 of the federal rules. So under the federal rules, what's this preliminary to something that's going to happen in the Central District? Nothing, I suppose. That I don't disagree with, Your Honor, no. Because this case and the Michigan case were always about preserving a meaningful remedy. Well, that's something that could have been done in the Illinois courts. You could have gotten – you could have moved for that there. What you're saying is that if there were 150 letters out there all over the United States, you could go into each district court and receive a preliminary injunction, which isn't preliminary to anything in that court, to hold on to the assets until something occurs. If I meet all the elements of that injunction, which we did, and all of my evidence is uncontradicted, which it was, yes, Your Honor, that's right. And alternatively, in Illinois, where mutual was, you could have moved for a preliminary injunction there at the very beginning of the case to keep them from getting any assets. When you say that's where mutual indemnity was, mutual indemnity submits that they are in Bermuda, and why they've chosen for litigation strategy to answer in Illinois and do what they – I can't speak for them, and I don't – Well, what I'm saying is that you could have moved in Illinois for the same preliminary injunction. But not obligated to, correct. Right. So instead, we're using a series of so-called preliminary injunctions in two states, which could be in 50 states, to sort of hold on to assets until the Seventh Circuit has completed its work, and then somebody petitions the Supreme Court, and then it goes on. In the meantime, all of these assets are to be frozen, waiting for determination as to whether or not what? The ultimate merits of the underlying litigation. The merits or the venue? No, the ultimate – no. That's a very good distinction, Your Honor, because that is why this isn't a collateral estoppel or a merits dispute here, because the only issue decided by Judge Castile thus far has not been the merits of our claims. It's only been a venue. So the issue then, if your adversary is right in the Seventh Circuit, and you exhaust your remedies of going to the Supreme Court and petitioning for certiorari, then the case has to be started in the foreign jurisdiction to which you'll object, and it's only after that foreign jurisdiction makes its decision and that's appealed and all of the exhaustion. At that time, Judge King in the Central District will release the funds. That's right, with one clarification. We've not objected and have agreed and consented with Judge King. Once we exhaust appeals on the forum selection clause, which will run its way up through the Seventh Circuit, and a petition for certiorari, if appropriate, if we're unsuccessful there, this case will be litigated in Bermuda. There's no issue with respect to that on the merits. It's not a venue issue, but on the merits. But your theory is that that injunction is preliminary to a final adjudication of the merits, which may be in a foreign jurisdiction. Absolutely right, Your Honor, and there is nothing in – So it's not preliminary to anything that's going to happen in California. It's preliminary only to wherever the merits are determined. I agree with that, Your Honor. That is correct. And the case you have that the federal court has jurisdiction to do this would be what? That venue is appropriate in California, venue is appropriate in Michigan, that we are bringing actions under diversity of jurisdiction, subject matter jurisdiction, pursuant to the governing UCC statutes in those states where the race, the LOCs, are. So necessarily you have to be on the basis that state law procedures are going to apply rather than federal procedures? I don't think federal procedures have squarely answered this question. Okay. I'd like to point to a case that says I can't do that, Judge. So this is sort of counterintuitive to what I usually see in court. So what case is there that we should test this based upon California law as distinguished from federal law dealing with preliminary injunctions? I'm not trying to avoid your question, Judge. This is where I fail to understand the distinction between the two where our adversary has done nothing to challenge the bona fides of our case, whether it be under the UCC or whether it be under Federal Rule Procedure 65. And Judge King analyzed them under both powers to convince himself that we were right on either one. They did not challenge before Judge King or before Judge O'Meara in Michigan the appropriateness of us saying it should have been brought in Illinois and that's subject to a form selection clause. There's no logic to that, Judge, because just like there's no logic to the suggestion collateral estoppel applies here. Judge Castile has not ruled on the merits. He didn't have any evidence like Judge King did or Judge O'Meara had of whether we meet the injunction standards being more likely than not, proof of our ability more likely than not that we would succeed on the ultimate merits. He also weighed the harms and balanced those harms appropriately under Ninth Circuit standards. They offered nothing to contradict that. As I read the statute in California, it permits any court of competent jurisdiction, so I guess in this case it would be the Federal District Court, to either temporarily or permanently enjoin distribution of funds under a letter of credit. That's the essence of the statute. That's exactly right, Your Honor. And so on the one hand, it makes some sense that if you look at the letter of the statute, that's exactly what the judge has done. But in doing that, of course, he's affected proceeds, which are at the heart of a dispute between two parties that have a form selection clause. And I guess my question is whether that form selection clause, if you're incorrect and you should be in Bermuda as opposed to the United States, and that's the ultimate ruling of the Seventh Circuit, how does that form selection clause affect your 5109 action in California? Because that seems the ultimate question. Two parts of the answer. I don't want to argue the correctness of the form selection clause appeal, other than to point out that mutual indemnity. You can either win or lose. Right. But to point out that mutual indemnity, the party that's before you today, isn't a party to the contract that contains the form selection clause, point one. Point two, we pointed out to Judge King, and he recognized we do not have an adequate remedy in Bermuda. Bermuda does not recognize fraud in the transaction standard under UCC law. And that's a finding of fact. That's not a legal determination. That's a finding of fact by Judge King, which has afforded substantial deference, and there must be a showing of an abuse of discretion. Like there's been no evidence to contradict our evidence, there's been no showing that Judge King abused his discretion here. So if we are in Bermuda, the short answer to why we can't affect this remedy there is the law doesn't afford us that opportunity. And even if the law of Illinois afforded you that opportunity, you're not required to file in Illinois for this procedure. Is that right? Correct. And I don't mean to be glib and suggest what difference does it make whether we filed it in Illinois or filed it here. We believed it was legally correct. There wasn't some nefarious reason. We had no desire to go off to march into three different courts. We believed it was the appropriate thing to do as we read the law and the UCC obligation. Where was the bank and where was the LOC? This happened to be where the LOC was posted. Why would we willingly walk into a situation where we could get conflicting results? We assumed a larger burden, if anything, and we convinced Judge King we were correct. Judge O'Meara in Michigan awaited Judge King's analysis. He ended up adopting it in whole. I think it's because it's correct. I think it's because it's the correct analysis. And, Judge McEwen, you pointed out all this discussion, background discussion, about personal jurisdiction and venue. What does it have to do with all this? It doesn't have anything to do with all of this. Defendants initially made a personal jurisdiction challenge, which they abandoned once Judge Castillo ruled in Illinois. Judge King, receiving additional submissions on Judge Castillo's ruling, convened a conference call with the parties in a, in my experience, unheard of effort to grapple with these difficult issues and in conjunction with counsel meet and confer on what the controlling issues were. We came up with eight issues which we jointly briefed, and he determined correctly that issue number seven, that dealing with Section 5109, was the correct issue. And he tackled it correctly, and he clearly did not abuse his discretion in doing so. This case isn't about personal jurisdiction. If they were going to fight this case on personal jurisdiction grounds, and it was incumbent upon them to do that, once they elected to fight this on collateral estoppel, these other grounds, they abandoned it. Let me ask on that. You're saying that they abandoned personal jurisdiction in the California case? That's right, Your Honor, in this case. And that was in the conference call with the judge? By allowing this case to proceed to the merits on these issues. They can't have it both ways. They can't sit on the sidelines and say, well, we're going to. Well, I thought they put it in their brief. They did. They did. But they did not ask for any determination by the court on the question of personal jurisdiction. Okay. So that was a question I had on waiver on venue and personal jurisdiction, is it's in their brief. They asked the court, I thought, to dismiss your action on those grounds. So wouldn't that be enough to preserve it? The only way it comes back in is the argument that what Judge King was wrong because they were a Rule 19 necessary and indispensable party. And if you accept that. The UCC generally says that a beneficiary is not an indispensable party. Bingo. Which answers and puts to rest that analysis as far as we're concerned. But I don't think that if they're relevant, I don't think they've in any way abandoned those claims, at least as I read the record. You're not saying that they said to the judge, this doesn't matter, or we're giving up on that. No, I was attempting to answer your question, how do we get here in this procedural posture where Judge King has addressed focused issues and now we have all these other issues that are kind of swirling around in the record. What they're saying, as I understand it, is really that those issues were all preliminary, should have been preliminary to his decision on this issue. Only if they're right on the Rule 19 issue. And I would point out the problem from defendant's standpoint with Rule 19 is they also never interjected that. We interjected that in connection with Judge King's question, and it is issue number seven in the joint brief. What if, mutual indemnity, I agree with you that Judge Castillo's ruling takes you out of the mix here. Do I have an ability to enter this injunction and enter it only as against Bank of America? And it was in that context that we fully, we briefed the issue of Rule 19, why they weren't a necessary and indispensable party. Again, we submit that Judge King got that analysis correct, that that's subject to an abusive discretion standard of review, and he clearly did not abuse his discretion there. Do you agree that this statute is kind of like a prejudgment attachment statute in effect? Absolutely, absolutely. Where we make the requisite showing. Under the statute. Yes. And that's why I think it is so vitally important. When I say that mutual indemnity sat on the sidelines here and made an election, they made an election that they were not going to put on any proofs in this case. They weren't going to put on any proof to contradict our evidence that there was jurisdiction, our evidence that there was a fraud, our evidence that we were likely to prevail on the fraud. We had some of the best evidence. We had an inside whistleblower, Eric Bessar, and our evidence that there was irreparable injury and there would be no adequate remedy in the absence of an injunction. They offered no evidence and obviously can't now because having not introduced it into the record. But you would agree that, although it's a state statute, when we're evaluating Judge King's ultimate decision, we benchmark that against the federal injunction standards, this alternative standard employed by the Ninth Circuit. And we need them both. And the Napster standard, the sliding scale standard, everything is stacked up on our side. They've not offered any evidence, a lot of argument, a lot of bald argument from counsel, but no evidence to contradict what we have offered on both likelihood of success and irreparable injury, no adequate remedy at law. They can't. There's a reason we have these rules. There's a reason why we offered that evidence. Their only argument when Judge King confronted their counsel, why haven't you done that, was this concern, which is unfounded, that by doing so they would have stepped their toe in too far and it would have waved off on their personal jurisdiction issues. We know that's not the law. And Judge King was correct to point that out. That was a strategic decision on their part, strategic litigation decision, that they believed they were better off shadowboxing with Judge King and not confronting the evidence and they're better off shadowboxing today and pontificating about what-ifs rather than talking about evidence. We're the only ones with any evidence in this case, and that's why I would submit Judge King was quite comfortable doing what he did and quite clearly did not abuse his discretion. This isn't even a close case from 5109 or Rule 65 standards where you have no evidence. There's nothing to contradict what we put in. If there are no other questions, Your Honor, I've addressed all of my issues. Thank you. Thank you. I have a few points I'd like to make. First of all, counsel seems to be under the misapprehension that to apply collateral estoppel has to be a decision on the merits of the underlying dispute. That's not the case. This Court held, as I said in my opening remarks in the offshore sports line case, that collateral estoppel applies to a decision on the applicability of a form selection clause. That's exactly what we have here. Under Section 5109, picking up on Judge Wallace's comments in connection with preliminary to what, 5109, I suggest, also anticipates that the injunction there will be issued by the same court that is deciding the merits. We pointed out that. I don't see that at all. In fact, I think I read the statute and the nature of the statute. There's nothing that suggests that the permanent injunction is necessarily going to be based on the merits of that jurisdiction. Where do you draw that inference from? Well, I think just from the, excuse me, it says, Does a court of competent jurisdiction contemporarily or permanently enjoin the issuer from honoring a presentation, in this case of a letter of credit, if you claim that the presentation would facilitate a material fraud? Right. And it also, let's see if I can find this. You have to be entitled to relief under the law of the state, more likely than not to succeed under its claim of forgery or material fraud. There is no case anywhere in the United States where a court has issued an injunction under 5109 of the UCC to enjoin paying on a letter of credit preliminary to the resolution of the merits in another jurisdiction, let alone a foreign jurisdiction. It just has not happened in a situation like what we have here. Stop, stop. Okay. You know, this is where I'm having, I think we're like mixing and matching, and that's why I went back to really look at this statute and look at the UCC. I mean, it seems to me like this statute, if you had predators in 20 different locations and they couldn't be brought, they could or they couldn't be brought into one jurisdiction, this would permit you to go around the country and either in a state court or if you had diversity in federal court to basically do a prejudgment attachment. It's freezing the assets pending. Something. And don't you agree that this could be, if there were 20 different little puddles or piles of money, that you could do it in 20 different states? And 20 different states wouldn't be issuing decisions on the merits. No, but 20 different states under our fact scenario would have to decide whether the Foreign Selection Clause applies. It's much more efficient to go to the court where the plaintiffs are trying to litigate the actual merits and have that judge issue an injunction, if necessary, against the beneficiary, who, by the way, is an indispensable party to any litigation involving a letter of credit since we're the ones who are entitled to the money. Well, that's if we agree with you on the indispensable party aspect. But under this statute, while it might be more efficient, that doesn't mean it's not permitted to be done otherwise. Well, I don't think it's permitted because we are an indispensable party. The cases that have addressed this have held that the beneficiary of a letter of credit is indispensable. I think that's true under what would be true both under Rule 65 and under Section 5109. And because we are indispensable and there's no personal jurisdiction over us, the court simply did not have the authority to issue an injunction against us. I would also say on personal jurisdiction that we have not waived that argument. I didn't think we had. We argued it in the district court and in our briefs here, and I think that's quite clear. Counsel also said that we hadn't put in any evidence of our own. He's obligated, as the plaintiff and as the moving party, to establish the prerequisites for a preliminary injunction. His evidence is legally insufficient. I pointed out, for example, in my remarks that, and we said this in the briefs too, that they had no evidence at all of irreparable injury. I didn't hear him say, point to any actual specific pieces of evidence in the record. That's because there are none. Thank you. Thank you, Your Honor. The case of Hendricks v. Bank of America and Mutual is submitted and will adjourn for this morning. Thank you. Thank you.
judges: Wallace, McKeown, Callahan